[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was brought to court on December 12, 1998. The defendant filed an answer and cross-complaint on March 22, 1999. The case was tried to the court on June 28. 2000.
The court finds the following facts. The parties married on May 3, 1975 in New York State. They had three children issue of the marriage, one of whom, John, born March 18, 1984, is a minor. They have resided in Connecticut throughout their marriage. They have not received financial support from the State of Connecticut nor any municipality in Connecticut. The court has jurisdiction to decide this matter.
From the credible evidence, the court finds that at the time of trial, the plaintiff wife worked as a licensed practical nurse (hereinafter, "LPN") at Meridian Manor, a rehabilitation center. She obtained her LPN degree and license in 1982 and worked at Medicare Pavilion, the predecessor to Meridian, for 15 years. She then obtained employment in a doctor's office for three years, working three days per week, before she returned to Meridian. She now works four days per week from 3:00 p.m. to 11:30 p.m. and earns $685.52 gross income per week. She suffers from trigeminal neuralgia which causes pain on the left side of her face for which she takes pain medication. She also suffers from fibromyalgia, asthma and depression. She takes Prozac for the depression.
CT Page 12899 At the time of trial, the defendant husband, a firefighter for 23 years, held the position of deputy fire chief in Waterbury. He has suffered a disability of the knee. He also serves as a consultant to the Middlebury Fire Department. From both positions he earns $1,355 gross income per week. When first married he worked at Caldor's as a security guard.
The marriage has broken down irretrievably. The cause of the breakdown is the defendant's relationships with other women during the marriage, one in 1981, and another which began in the autumn of 1997. The parties had separated briefly as a result of the 1981 relationship before reconciling. The plaintiff had told the defendant that she would not continue in the marriage if he engaged in another relationship. The plaintiff filed this dissolution action after learning of the defendant's current relationship from her daughter.
Since some time after the date of the filing, she has resided with Robert Potz at the marital home. The court finds that that relationship did not cause the breakdown of the marriage. She receives $300 per week directly from Potz' employer, Standard Oil of Connecticut. She pays $325 toward his bills and forwards money occasionally to his sister. He purchases some gas for her car, food, and pays for meals outside of the home and for some expenses for her minor son, John. In addition to Potz and John, she has resided in the marital home with Danielle, her finance', a grandson, Tammy and Tammy's friend. The financial affidavit did not reflect the contribution of Potz, his expenses or those of the others. The plaintiff received no rent from her daughters or their friends although two of them were employed.
The parties own real property at 145 Neill Drive, Watertown. The property is valued at $205,000. There are two mortgages on the property totaling approximately $122,500 owed to the plaintiff's parents, John and Geraldine D'Addona. The parties agree that the property shall belong solely to the plaintiff who shall be responsible for paying the mortgages thereon.
The defendant husband has a pension valued at $104,000 as a result of his service in the Waterbury Fire Department. Based on that employment, he is not entitled to receive social security income, however. The plaintiff has no present interest in a retirement plan or 401K but is entitled to receive social security income. She is also a beneficiary of the John B. D'Addona trust from which she has received various sums at various times during the years 1994 through 1998 ranging from $323 to $1,340.
The plaintiff participated in a profit sharing plan at Medicare CT Page 12900 Pavilion, Meridian's predecessor. During her fifteen years of employment, she had accumulated a plan valued at $32,000. In June 1996, she withdrew the funds and received approximately $28,000 after the deduction of taxes. On June 11, 1996, she deposited $18,000 into her fire-fighters' credit union share account #1173-1 and invested $10,000 in a certificate of deposit in the parties' joint names. The plaintiff used $8,600 to pay for a family vacation and for various purchases. The defendant withdrew $4000 toward the purchase of a Crown Victoria automobile at the beginning of July, 1996. At various times through 1997, the defendant withdrew sums using his ATM card or making outright withdrawals. On some occasions he was on golf trips in Florida without his wife or children. He was unable to explain the reasons for several of the withdrawals. Crediting the defendant with one-half interest in his wife's IRA, the court finds he used well in excess of $14,000 for his own personal expenses without her concurrence.
The defendant failed to ascribe market value to his United and Waddell and Reed account. Statements from 1999 evidence a growth of approximately $1,000 from the last quarter of 1998 to the end of the third quarter of 1999. The court finds the value to be $10,000.
The parties agreed upon the resolution of the following issues before trial and their agreement is incorporated herein and made the orders of the court:
1. They shall share joint custody of the minor child, John. The plaintiff will have primary physical custody of the child and the defendant reasonable, flexible and liberal rights of visitation.
2. The defendant shall quitclaim his interest in the marital home to the plaintiff who shall be responsible for paying the mortgages, taxes and insurance thereon and hold the husband harmless.
The court has considered the claims of the parties and therefore the following additional orders shall enter:
1. The marriage of the parties shall be dissolved on the grounds of irretrievable breakdown.
2. The defendant shall pay to the plaintiff the sum of $162.50 in child support in conformity with the Child Support Guidelines. This amount shall be paid by immediate wage execution until the child attains the age of 19 years or graduates from high school, whichever event first occurs. He shall pay 64% of the child's unreimbursed medical expenses until his obligation to pay child support terminates.
CT Page 12901 3. The defendant shall pay the ATT bills for telephone calls he charged to the home phone and Dr. Skorpen's bill and hold the plaintiff harmless thereon.
4. Each party shall pay the debts listed on their financial affidavits and hold the other party harmless and indemnified thereon.
5. The defendant shall transfer 50% interest in his Waterbury Firefighters Pension plan to the plaintiff by way of a QUADRO.
6. (a) The defendant shall continue to provide medical insurance for the minor child, John until his obligation to support him ceases. The provisions of Connecticut General Statutes § 46b-84 (3) shall apply to this order.
The unreimbursed medical and dental expenses of the minor child including, but not limited to psychiatric, psychological, prescriptive, surgical and rehabilitative costs, shall be shared by the parties as follows: 36% by the plaintiff and 64% by the defendant.
6. (b) The defendant shall continue to provide medical insurance for the benefit of the plaintiff so long as the law permits. The cost of Cobra benefits, $383.29 per month, shall be deemed to be in the nature of alimony, non-modifiable and not dischargeable in bankruptcy. It is the court's intent that the payments shall be considered income to the plaintiff and deductible by the defendant.
7. The defendant shall retain the Saturn, which she received from the defendant.
The defendant shall pay the loan on the Saturn, the balance of which is $8,800 until it is paid in full, or until the plaintiff sells the car. The payment shall be deemed to be in the nature of alimony, non-modifiable and not dischargeable in bankruptcy. It is the intent of the court that the payments be considered income to the plaintiff and deductible by the defendant and are not modifiable or terminable in the event of her remarriage or cohabitation pursuant to statute.
8. Each party shall retain the items of personal property listed on their financial affidavits, with the exception of the Saturn.
9. The defendant shall claim the child as his dependent for income tax purposes.
10. The defendant shall name the minor child as irrevocable beneficiary on his life insurance policies until his obligation to pay child support CT Page 12902 ceases.
11. Each party shall pay his own counsel fees.
All other claims for relief not specifically addressed are rejected.
Judgment shall enter in accordance with the foregoing.
SANDRA VILARDI LEHENY, J.